[Nos. A054230, A055352. First Dist., Div. Four. July 14, 1992.]

In re the Marriage of SANDRA R. and THOMAS Q. WINTER.
SANDRA R. WINTER, Respondent, v.
THOMAS Q. WINTER, Appellant.

## COUNSEL

Harry A. Allen for Appellant.

Louise Bayles-Fightmaster, Gregory F. Jilka and Allison R. Pharis for Respondent.

## OPINION

**PERLEY, J.**—Thomas Q. Winter (Husband) appeals from an order requiring him to pay temporary spousal support to Sandra R. Winter (Wife). We affirm.

### FACTS

Husband is a physician and a lawyer; Wife is a nurse and a teacher. Pending dissolution of their 22-year marriage, Wife filed a motion in August

of 1990 for temporary spousal support "according to the Sonoma County Guidelines." (Civ. Code, § 4357.)[1] Husband filed a responsive declaration stating inter alia that "I am willing to pay spousal support on behalf of my wife pursuant to the Sonoma County Court Guidelines and agree the Court should make a temporary order in that regard."

The parties entered into a court-approved stipulation in November of 1990. They agreed that Husband would pay spousal support of $4,033 per month during September-December 1990, "without prejudice to either party as to the ultimate determination of appropriate temporary spousal support for this period of time, or to the level of any future spousal support payments ordered." The stipulation was based on the assumption that the parties would be filing a joint tax return for 1990, and it states that the amount paid for support "shall be adjusted to accurately reflect the actual income received by both parties [in 1990] and spousal support shall be set according to the Sonoma County Guidelines based on the actual income received, taking into account any other appropriate circumstances as well. [¶] Spousal support effective January 1, 1991 and forward shall be determined according to the then existing income situations and needs of Husband and Wife and under the assumption that separate tax returns will be filed for tax year 1991."

The parties entered into another court-approved stipulation in April of 1991. Husband had purchased a house in May of 1990 for $395,000, using community property funds. Wife continued to occupy the house in which the parties had resided, and in which Husband estimated an equity of about $300,000. The April 1991 stipulation released $114,000 of community funds to Wife "for the purpose of equalizing the two residences in which they currently reside," subject to adjustment based on appraisals of the properties. The stipulation also provided for the release of up to $10,000 in community funds to the trust account for each side's attorney, with the ultimate allocation of these funds reserved until final settlement or trial of all of the issues in the case.

The hearing on temporary spousal support was held on May 8, 1991. Both sides filed trial briefs on the day of the hearing, along with declarations of income and expense. In her trial brief, Wife argued that standard temporary spousal support guidelines should be applied in determining the amount of the award. She submitted that "in order to maintain the status quo of both parties pending the resolution of the entire dissolution action, the Court must consider the very substantial investment power that existed in a marriage that had an adjusted gross income of [$313,233] in 1989 but spent only [$31,500] on community living expenses. Wife's position is that she is

---

[1]All further statutory references are to the Civil Code.

absolutely entitled to continue the investment power that existed during the marriage pending the resolution of the property division." Husband's trial brief requested an order for temporary support "consistent with wife's standard of living and expenses during marriage, taking into account her passive income from community assets and her earnings."

The parties stipulated at the hearing that Wife's monthly gross income from earnings was $1,750. Wife declared that her total monthly expenses were $4,370, but the court found her reasonable monthly living expenses to be only $2,600. Based on Husband's declaration, the court found his gross monthly income to be $21,474. The court found that each party had additional investment income of $1,234 per month. The court also noted that the parties' community estate amounted to approximately $2.5 million.

Using the parties' income figures and a computer program based on the temporary spousal support guidelines, the court determined that Husband owed temporary support of $6,806 per month beginning in 1991. The court also adjusted the amount of temporary support payable in 1990, finding that Husband owed $6,939 per month if the parties filed taxes for the year separately, or $4,921 per month if they filed jointly. The court noted that "[t]he argument of Husband is that because the parties basically had a frugal lifestyle and that their living expenses during the marriage were . . . 2629 per month . . . that the court should award no more than that . . . ." However, the court was of the "view that in a temporary support situation that the temporary spousal support guidelines are applicable."

The court amplified its reasoning as follows: "the supported spouse should have the same opportunity to have a certain portion of support payable to her that would allow her to continue the lifestyle that she had, at least on a temporary basis, of having some discretionary income for the purposes of investing, just as husband would have the right to utilize a portion of the money retained by him for investing, assuming he hasn't changed his particular lifestyle. Also, I think that does allow the parties a certain parity in terms of their ability to proceed with the litigation and complete the legal matters relating to the trial of the dissolution case. [¶] . . . taking into account the fact that the parties during the marriage spent a portion of their money that they could have spent on themselves or taking trips in investing, I think that's part of the standard of living that the court wishes to allow."

Husband filed the notice of appeal in A054230 on July 3, 1991, from the decision for temporary support announced in court on May 8. The court's written findings and order were entered on July 19. On October 15, husband filed a second notice of appeal (A055352) from both the oral and written

orders. The second notice was filed as a precaution in case the first was determined to be invalid, and it indicates that no notice of entry of the written order for temporary support had been served. The appeals in A054230 and A055352 thus involve the same subject matter, and they have been consolidated for purposes of briefing and decision.

## DISCUSSION

■ Orders for temporary spousal support are appealable (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 369) [134 Cal.Rptr. 197, 556 P.2d 297], and Wife agrees that Husband has properly perfected an appeal of the order here. "[A]n award of temporary spousal support is within the sole discretion of the trial court," and will not be reversed unless it amounts to an abuse of discretion. (*In re Marriage of Stich* (1985) 169 Cal.App.3d 64, 71 [214 Cal.Rptr. 919].) We find no abuse of discretion in this instance.

■ Temporary spousal support may be ordered in "any amount that is necessary for . . . support and maintenance." (§ 4357; cf. § 4801, subd. (a) [various factors to be considered in connection with permanent spousal support].) Whereas permanent spousal support "provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property," temporary spousal support "is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations." (*In re Marriage of Burlini* (1983) 143 Cal.App.3d 65, 68, 69 [191 Cal.Rptr. 541]; see also *In re Marriage of McNaughton* (1983) 145 Cal.App.3d 845, 849 [194 Cal.Rptr. 176]; Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1992) § 5:7.4, p. 5-6 [temporary support is intended "to assure a spouse substantially the same living conditions to which he or she has been accustomed pending final judgment"].)

■ The order for temporary support in this case was designed to preserve the status quo between the parties, and Husband does not contend that it operates otherwise. The "status quo" in this case, where the parties lived very modestly in comparison to their means, included substantial funds for saving and investment. Husband concedes that if this were a case where the parties had "enjoyed an expensive lifestyle . . . . the Court could find that a just allowance would be one sufficient to enable the wife to continue enjoyment of luxuries which had become 'necessities.' " We agree with the trial court that a comparable allowance is equally appropriate here. We note that Husband does not contend that he cannot afford to pay the support ordered, and we fail to see why Wife should be deprived of her accustomed

life-style just because it involved the purchase of stocks and bonds rather than fur coats.

We also perceive no problem with the trial court's use of standard guidelines, based solely on income, for temporary support. The use of such guidelines "should be encouraged to help lawyers and litigants predict more accurately what temporary support order would be issued if the case proceeded to a contested hearing. . . . They promote consistency in the temporary orders issued in a department with a busy domestic relations motion calendar, and are especially valuable in achieving comparable orders under similar financial facts . . . ." (*In re Marriage of Burlini, supra,* 143 Cal.App.3d at p. 69.) We find no "unusual facts or circumstances" that would preclude the use of the guidelines in this case. (*Id.,* at p. 70 [citing tax considerations and unusual expenses].) The parties here appear to have been "unusually" frugal, but that does not militate against the use of guidelines to determine temporary support based on their relative incomes. Husband evidently has the means to make the payments specified by the guidelines, and those payments will preserve the status quo. If the parties were still together, then Wife would still be enjoying the benefit of Husband's substantially higher income.[2]

Husband contends that use of the guidelines to fix support beginning in 1991 violated the parties' November 1990 stipulation. This stipulation did not state that the guidelines could not be used, but Husband submits that the parties must have intended that result, because the stipulation referred to use of the guidelines in setting support for 1990, and it did not mention the guidelines in connection with support effective January 1, 1991. Husband did not advance this argument below. His trial brief did not suggest that the November stipulation was among the factors to be considered in determining temporary support, and his counsel did not refer to the stipulation at the hearing.

It is unjust to an opponent and unfair to the trial court to allow a party to change his position and adopt a new theory on appeal, unless "the facts were clearly put at issue at trial and are undisputed on appeal. . . . '[I]f the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at trial the opposing party should not be required to defend against it on appeal.'" (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879 [242 Cal.Rptr. 184].) Whether the November stipulation precluded the use of

---

[2]Having concluded that the award was justified to preserve the status quo, we need not determine whether it could also be justified by any need for funds for litigation incident to the dissolution.

temporary support guidelines after 1990 is "open to controversy," in light of its failure to so state and Husband's prior declaration that he was willing to pay support pursuant to the guidelines. We therefore agree with Wife that Husband cannot raise that argument for the first time on appeal. (See, e.g., *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 52-53 [272 Cal.Rptr. 560] [declining without discussion to consider effect of child support guidelines because appellant did not raise the issue at trial].)

■ Husband's arguments that the point could not be waived are unavailing. The effect of the stipulation was an issue of fact (see 3 Corbin, Contracts (1960) § 554, pp. 218-222 [interpretation of contract is question of fact unless "the evidence is so clear that no reasonable man would determine the issue before the court in any way but one"], not a legal question of jurisdiction (see, e.g., *In re Marriage of Williams* (1972) 29 Cal.App.3d 368, 381 [105 Cal.Rptr. 406] [declining to consider effect of settlement agreement on form of judgment where nothing in record indicated that "the court or counsel for either side even considered the question"]). Husband contends that Wife should be estopped from asserting invited error because she accepted "substantial" payments under the stipulation that "were to the financial prejudice of Husband." However, the interim support payments under the stipulation neither prejudiced Husband nor substantially benefited Wife because they were significantly less than those eventually ordered under the standard guidelines.

■ Husband next contends that the temporary support ordered after 1990 violated the proviso in section 4806 that "where there are no children, and either party has or acquires a separate estate, including income from employment, sufficient for his or her proper support, no support order shall be made or continued against the other party." This statute was not violated, even assuming arguendo that the amount required for Wife's "proper [temporary] support" included only her living expenses of $2,600 per month, because she had no "separate estate" apart from her earnings of $1,750 per month.

Husband suggests without authority that Wife's "separate estate" also included the $114,000 of community funds she received by way of offset against the community funds spent by Husband on a new house. However, those funds must continue to be characterized as community property until the final property division, at which point both parties will be credited with community funds used by or distributed to the other. Any other interpretation would contravene one of the basic purposes of temporary support, which is to preserve community assets pending trial. (See *In re Marriage of Garcia* (1990) 224 Cal.App.3d 885, 894 [274 Cal.Rptr. 194].) The same reasoning

applies to Wife's monthly investment income of $1,234, which is evidently proceeds of community property. (See, e.g. *In re Marriage of Shelton* (1981) 118 Cal.App.3d 811, 816 [173 Cal.Rptr. 629] [proceeds of community property acquired after separation remain community property].) This reasoning also disposes of Husband's claim that support was improperly ordered for 1990 because Wife's separate income during that period exceeded her expenses.

Husband contends finally, and again without any pertinent authority, that the order for temporary support violated section 5118. Section 5118 merely states that earnings and accumulations while spouses are living apart are separate property. Nothing in this statute affords any basis for challenging an award of temporary support pursuant to the standard guidelines.

### DISPOSITION

The order for temporary spousal support is affirmed. Costs to Wife.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied July 6, 1992.