Filed 3/26/13  Marriage of Prokop CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re Marriage of STANLEY and MARIA PROKOP. | D059062 |
| STANLEY PROKOP, | |
| Respondent and Appellant, | (Super. Ct. No.  D513103) |
| v. | |
| MARIA ARROYO PROKOP, | |
| Petitioner and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel Wohlfeil, Judge.  Affirmed.

Stanley J. Prokop appeals from a judgment that, among other things, imputed income to him and denied him spousal support.  He contends the trial court erred in deciding these and other issues.  We reject his contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Maria and Stanley were married in 1998 and have one minor child. Maria served as an officer in the United States Army, became an attorney and worked as a juvenile court referee until 2003 when multiple sclerosis rendered her permanently disabled and unable to work. Maria received disability benefits from the Veterans Administration and retirement disability from her work as a referee. Stanley worked for Science Applications International Corp (SAIC) as the manager of the computer security engineering team and earned an annual salary of $102,700. He quit his job in 2005 claiming it was too stressful to work and take care of his family. Thereafter, Stanley trained to become an aircraft mechanic so he could work on his own plane.

The couple separated in 2008. They stipulated that Stanley would submit to a vocational examination by Carole A. Nimietz, a certified vocational evaluator and vocational rehabilitation counselor. In April 2010 the court entered a partial judgment regarding custody, visitation and division of some of the property. After trial, the court issued its intended statement of decision. Both parties filed objections to the intended statement of decision. After ruling on the objections, the court incorporated its changes into a findings and order after hearing, and directed that the tentative decision and changes constituted its statement of decision. Stanley timely appealed.

DISCUSSION

I. *Imputed Income*

A. Trial Court's Findings

The trial court found Stanley's employment history, skills, education and certifications to be "remarkable." Stanley earned about $100,000 a year working at SAIC. After leaving his job in early 2005, the court found that Stanley "devoted his working time" to flying and airplane mechanics. It concluded that Stanley would be "clearly under-employed" working as an airplane mechanic with an annual earning capacity of $41,600. The court acknowledged Stanley required shoulder surgery and would be unable to perform the responsibilities of an airline mechanic, but found that he had ample time to secure a higher earning computer security job before scheduling the pending surgery.

The court accepted the testimony of Dr. Samuel Bresler, Maria's human resources expert, that potential jobs existed for Stanley as a computer security engineer, but rejected Dr. Bresler's conclusion that Stanley qualified for an annual compensation package of more than $109,000. Instead, the court agreed with Nimietz's testimony that Stanley's earning potential in the computer security field was between $80,000 and $90,000. To allow Stanley time to recuperate from his scheduled shoulder surgery, the court delayed imputing the higher computer security engineering income for six full months. Based on Stanley's work and activities in the airplane industry after quitting his job at SAIC, the court imputed to Stanley the amount of money an airplane mechanic

3

could have earned—$41,600 per year or $3,467 per month for six months. Thereafter, it imputed annual income to Stanley of $90,000 per year or $7,500 per month.

B. Analysis

A trial court has the discretion to substitute earning capacity for actual income in applying the guideline formulas for child and spousal support. (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1337 (*LaBass & Munsee*); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 308.) "Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire. [Citation.]" (*LaBass & Munsee*, *supra*, at pp. 1337-1338, internal quotation marks omitted.) We review the trial court's decision to impute income to Stanley based on his earning capacity for an abuse of discretion. (*In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1393.) We review the specific amount imputed under the substantial evidence standard. (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 930.) Under the substantial evidence standard of review, "we do not pass on the credibility of witnesses, resolve conflicts in the evidence, or determine the weight of the evidence. [Citation.] We simply determine whether there is substantial evidence, believed by the trial court, that supports the court's findings." (*In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 503.)

4

Stanley does not challenge the trial court's decision to impute income to him; rather, he claims the evidence does not support the court's findings that: (1) he had the ability to earn an airplane mechanic salary of $41,600 for six months based on his pending surgery; and (2) current opportunities existed for him to work as a computer security engineer. Specifically, he contends the court ignored his pending surgery and rehabilitation time when it imputed the airplane mechanic salary of $41,600 per year.

As we shall explain, the evidence supported the trial court's implied conclusion that Stanley had been malingering, and that he had the ability to work *in some capacity* during the six-month period after his surgery to earn the imputed salary of $41,600 per year.

Stanley focuses on his health and ignores that the ability to work includes other factors such as age, occupation, skills, education, background, work experience and qualifications. (*LaBass & Munsee*, *supra*, 56 Cal.App.4th at pp. 1337-1338.) Significantly, Stanley does not dispute the trial court's conclusions that other than his shoulder, he was in good health, his unemployment was voluntary and he possessed significant skills, education and job history. Additionally, the record does not support Stanley's assertion that the trial court ignored his pending surgery and rehabilitation time when it imputed a salary of $41,600 per year for six months. In imputing this salary, the trial court expressly acknowledged that Stanley had shoulder surgery in April 2010 and would not be able to "perform mechanic responsibilities," but noted that Stanley had ample time to secure a job after he separated from Maria in 2008 and before undergoing surgery.

5

Trial took place about 10 months after Nimietz prepared the vocational report for Stanley. Nimietz reported that after Stanley left SAIC in 2005, he worked on airplanes until about June 2007, but had no further work history and was attending school to become a mechanic. In her report, Nimietz noted that Stanley experienced a "pinching sensation" in his right shoulder over the last 18 months and intermittent discomfort in his right knee. Stanley, however, provided no medical evidence from a treating physician limiting his ability to work and reported that he could kneel, crouch, squat and climb ladders. Nimietz concluded that Stanley had no physical disabilities and was not restricted in the type of work he could perform. She also concluded that Stanley had not been diligent in searching for a job, that he had the ability to earn an annual income of $41,600 as an entry-level mechanic or $80,000 to $90,000 as a senior security manager.

In August 2009, Stanley had shoulder surgery. In November 2009, his physician noted that while Stanley continued to experience discomfort in that shoulder, he could fully elevate that arm. In April 2010, Stanley testified that he had another shoulder surgery scheduled for later that month. Stanley, however, was not advised by any doctor that he could not work in the computer field.

The court heard testimony from Dr. Bresler regarding available jobs in the computer field. Dr. Bresler "found between 400 and 450 jobs" within 50 miles of Stanley's home zip code while searching for "security engineering manager," "senior security engineer" and "certified information system security professional." Using his expert opinion considering the job descriptions and Stanley's background and experience, he narrowed the list to 10 jobs, identifying the specific employers and available positions,

6

and then divided the jobs into three categories, providing salary ranges available for these various positions that ranged from about $68,000 to $124,000. Dr. Bresler believed that given Stanley's recent absence from the job market, Stanley would likely be offered an amount around the median salary, but that he should eventually earn the top end of the scale based on his education and experience.

In the absence of any evidence showing that Stanley would be unable to work in any capacity for six months after his shoulder surgery this evidence amply supported the trial court's implied conclusion that, if motivated to find employment, Stanley would be able to earn at least $41,600 annually for six months.

Next, Stanley contends the evidence did not support the trial court's decision to step up his imputed income to $90,000 after six months, claiming current opportunities did not exist for him to work as a computer security engineer and Nimietz's June 2009 report was stale. We disagree.

Nimietz's report supported the trial court's implied conclusion that computer jobs existed for Stanley if he was motivated to find such employment. While this report was 10 months old by the time of trial, the court also had before it Dr. Bresler's report, prepared two months earlier, that similarly supported the court's conclusion. While Dr. Bresler acknowledged the poor state of the general job market, he concluded that jobs existed for computer professionals in multiple industries. The fact Stanley subsequently applied for the 10 jobs identified by Dr. Bresler but did not obtain employment, while disheartening, is not dispositive as Dr. Bresler identified hundreds of other jobs during his initial search. Maria met her burden of showing job opportunities existed for Stanley

7

where he could earn $90,000; her burden did "not include actually showing that the [spouse] to whom the income *would* be imputed would have gotten a given job *if* he . . . had applied." (*In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1305 ["Readers need only use a little imagination to think of all the ways that a parent with both ability to do a job and the opportunity to get it could subtly sabotage a job application or interview." (Fn. omitted.)].)

Finally, we reject Stanley's contention that the court was biased against him based on its comment at a pretrial hearing in July 2009 that "there's no question that for purposes of permanent support orders, the court will impute income." At that hearing, the court received and considered Nimietz's report and imputed minimum wage income to Stanley for purposes of awarding child support. After reviewing the transcript we are convinced that the court made its comment to warn Stanley that, based on Nimietz's report, it would be imputing income to him in the future. This warning, however, does not demonstrate bias without a showing that the trial court failed to weigh and consider all the evidence before it imputed income for purposes of permanent support. Rather, the court's intended statement of decision reveals it considered, among other things, Stanley's employment history, Nimietz's report, and Dr. Bresler's testimony.

The trial court properly imputed income to Stanley. Accordingly, we reject his arguments that the child support or ruling on his attorney fee request must be reversed because they were based on the imputed income.

8

## II. *Spousal Support*

### A. Trial Court's Findings

The trial court allocated over two pages of its statement of decision to the issue of spousal support. It found that the parties' marital standard of living was upper middle class and that the marriage was long-term. It found that the parties' minor child did not impair their ability to work, that neither party contributed to the other party's education, there was no criminal conviction for abuse, and any emotional distress resulting from domestic violence did not factor into its decision.

It considered Stanley's age, health, his historical earnings and imputed earning capacity and found a market existed for his "impressive skill sets." It noted that Stanley's earning capacity was impaired because he allowed a certification to lapse, but concluded that his unemployment was voluntary and that the impaired earning capacity fell "squarely on [Stanley's] shoulders."

As to Maria, the court found she was completely disabled and had no earning capacity. It noted there was conflicting evidence regarding her ability to pay spousal support, with Maria arguing that she required all of her income for her health care needs and supporting the minor child, and Stanley arguing Maria had the ability to pay spousal support because her income exceeded his income. Ultimately, the court concluded that both parties possessed a need for support noting that each lived under "modest circumstances." Finally, it found that both parties possessed assets to support themselves, that Stanley stated under oath that he was "financially secure," and that Stanley would

9

suffer a tax penalty if he withdrew funds from his pension/retirement accounts at his current age.

Based on all of the above, the trial court concluded it "would be unjust and inequitable for [Maria], as a 100% disabled veteran, to support [Stanley], who present[ed] as a talented, educated and experienced professional capable of earning an annual income of $90,000 or more." Accordingly, it denied Stanley's request for spousal support, but reserved the right of each party to request support in the future.

B. Analysis

Stanley contends the trial court abused its discretion when it declined to award him spousal support because it failed to analyze all of the Family Code section 4320 factors. (Undesignated statutory references are to the Family Code.) Specifically, he complains that the court did not mention or consider Maria's income and expenses. We disagree.

Section 4320 identifies 14 factors a trial court must consider in ordering permanent spousal support. (§ 4320, subds. (a)-(n).) These factors include each spouse's ability to maintain the marital standard of living and the obligations and assets of each spouse. (§ 4320, subds. (a), (e).) While the trial court "must consider the mandatory guidelines of section 4320," it possesses broad discretion to weigh the factors with the goal of accomplishing substantial justice for the parties in the case before it. (*In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 93, fn. omitted.) " 'Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders.' " (*Ibid.*)

Here, review of the trial court's entire statement of decision regarding spousal support, including the attached DissoMaster printouts, shows the court properly considered all of the section 4320 factors, including Maria's income and expenses. The court found that Maria had no earning potential and the DissoMaster printouts listed the parties' income and expenses. After a lengthy analysis, it found that Maria's disability income was available for purposes of determining child support. Although the trial court did not make a similar finding under the portion of the statement of decision addressing spousal support, in the absence of any contrary indication, we assume the court considered Maria's disability income as available for purposes of determining spousal support.

Significantly, the trial court commented that conflicting evidence existed regarding Maria's ability to pay any spousal support, noting the specific arguments of each party. Thereafter, it found that both parties lived under "modest circumstances" and needed support. This constituted an implied finding that *neither party* had the income, separately or combined, to maintain the marital standard of living. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 488 ["In most instances, it is impossible at separation for either party to have sufficient funds to continue to live in the same life-style enjoyed during the marriage."].) After examining all the section 4320 factors and the unique circumstances before it, the trial court declined Stanley's request for permanent spousal support, but reserved the right for either party to request support in the future. In sum, Stanley has failed to demonstrate that the trial court abused its discretion when it declined his request for spousal support.

11

Finally, Stanley contends the statement of decision contains several ambiguous findings. First, he claims that the court's finding that "each party possesses assets from which they will be able to support themselves" is ambiguous as to what assets he has from which he could support himself. He next claims the court's reasoning was ambiguous as to why it did not award spousal support.

The purpose of a statement of decision is to explain "the factual and legal basis for its decision as to each of the principal controverted issues at trial"].) (Code Civ. Proc., § 632.) Here, the principal controverted issue was Stanley's right to spousal support. In deciding this issue the court cited the legal basis for its decision (§ 4320) and listed specific facts that it weighed in deciding the matter. Nothing more is required. This is presumably why the trial court overruled Stanley's ambiguity objections to certain parts of the statement of decision.

### III. *Temporary Spousal Support*

A. Facts

In July 2009, the trial court denied Stanley's request for temporary spousal support without prejudice. "In lieu of ongoing temporary spousal support, the court award[ed] $50,000 to [Stanley] to be paid from the house proceeds held in trust," reserved jurisdiction over allocation of this payment, and made the award without prejudice. In his trial brief, Stanley argued that an issue to be litigated included the allocation and characterization of the $50,000 awarded to him from the proceeds of the sale of the family residence. During closing argument, his counsel argued that the income figures used by the court to determine child support would have produced suggested spousal

12

support of about $3,796 per month, that Stanley requested support in March 2009, a 13-month period, and that the $50,000 should be treated as temporary spousal support. The trial court denied Stanley's request to reallocate the character of the $50,000 distribution as temporary spousal support, stating that the funds remained Stanley's share of the proceeds from the sale of the community residence.

B. Analysis

Stanley contends the trial court abused its discretion when it charged him for his own temporary support. Maria responds that Stanley's failure to appeal from the appealable July 2009 order denying temporary support precludes us from exercising jurisdiction to review that order in this appeal. Even if jurisdiction existed, Maria contends we cannot determine whether the trial court abused its discretion because Stanley did not include in the record on appeal the evidence on which the court denied temporary spousal support.

While a temporary support order is appealable (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637), Stanley is not appealing from the July 2009 order denying him temporary support, he is appealing from the court's subsequent order denying his request to reallocate the character of the $50,000 distribution as temporary spousal support. We have jurisdiction to review this order and do so based on the evidence presented at trial.

Temporary spousal support is intended to preserve the standard of living enjoyed by the parties pending final division of their assets. (*In re Marriage of Winter* (1992) 7 Cal.App.4th 1926, 1932 (*Winter*).) Unlike permanent support, an award of temporary

13

support may be ordered in "any amount" subject only to the supported party's needs and the supporting party's ability to pay. (§ 3600; *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594.) Trial courts are permitted and encouraged to use standard guidelines, based solely on income, in setting temporary spousal support to promote consistency and predictability. (*Winter*, *supra*, at p. 1933.) A trial court, however, may take into account any unusual factors (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5-6, fn. 3; *Winter*, *supra*, at p. 1933) and we review a temporary spousal support order for an abuse of discretion (*Winter*, *supra*, at p. 1933).

Under the facts and circumstances, we cannot conclude that the court abused its discretion when it denied Stanley's request to reallocate the character of the $50,000 distribution as temporary spousal support. First, the trial court could have reasonably concluded that Maria did not have the ability to pay temporary spousal support as her expenses exceeded her income. Maria received monthly income of about $15,716 and she presented evidence that her monthly expenses were about $16,207. Significantly, multiple sclerosis is considered a very expensive medical condition as individuals with the disease live near normal life spans, but accumulate additional disabilities as they age. Maria suffered from urinary and bowel problems, severe muscle spasms and debilitating fatigue. She took numerous medications, used a motorized wheelchair and required personal and household assistance.

The trial court could have also reasonably concluded that although Maria's monthly income greatly exceeded Stanley's monthly income, Stanley had sufficient assets to maintain a standard of living equal to Maria's. Namely, when Stanley stopped working

14

in 2005 he implied to his friends that he did so because he was financially secure. Stanley also filed a sworn declaration shortly after Maria filed her petition stating he was "financially secure." Further, during the pendency of the trial court proceedings, in addition to the $50,000 awarded to Stanley from the house proceeds held in trust, the trial court awarded Stanley $126,000 from funds held in trust by Maria's attorney as a settlement of his claims for reimbursement to the acquisition of community property under section 2640, and awarded both parties $40,000 of community property funds to use as they pleased.

Under these unusual circumstances, the court's decision to deny Stanley temporary spousal support did not amount to an abuse of discretion.

IV. *Violation of Court Order*

A. Facts

In early December 2008, Maria filed her petition seeking a dissolution. Later that month, Maria sold stock without Stanley's authorization. Shares in two companies were sold for a total of about $6,900. After the sale the share price for both stocks went up.

At trial, Maria testified that she did not realize that the checking account was a stock account and that she had authorized the sale of stock. Maria claimed that she wanted to pay the mortgage and did not realize she was "violat[ing] anything." Stanley presented evidence that Maria's unilateral sale of stock cost the parties about $5,900. Maria's counsel argued that Maria did not "intentionally or maliciously sell the stocks." Stanley's counsel argued that Maria should be ordered to reimburse the community for

15

the loss as her sale of the stocks violated an automatic temporary restraining order (ATRO).

In its statement of decision, the court noted that both parties made a reimbursement claim arising from unauthorized distributions to benefit only one party. Specifically, Stanley sought reimbursement of $9,030 from Maria for sale of the stock and Maria sought reimbursement from Stanley of $8,920. The court commented that both parties testified regarding the distributions and it "accept[ed] each party's respective explanations." It found that the distributions were reasonable or necessary, that neither party unreasonably benefited at the expense of the other and denied each party's claim for reimbursement.

B. Analysis

In this, and every dissolution proceeding, four standard mutual ATRO's bind the petitioner, upon filing the petition and issuance of summons, and bind the respondent, upon personal service or waiver of service of the petition and summons. (§§ 233, subd. (a), 2040, subd. (a).) The ATRO's bar both parties from, among other things, transferring or disposing of any property without the other party's written consent or a court order, "except in the usual course of business or for the necessities of life." (§ 2040, subd. (a)(2).)

Citing *In re Marriage of McTiernan and Dubrow* (2005) 133 Cal.App.4th 1090 (*McTiernan*), Stanley contends reimbursement was mandated because Maria's innocent intent is irrelevant. In *McTiernan*, the trial court concluded that the husband violated an ATRO by unilaterally selling community property stock to pay community expenses.

16

(*Id*. at pp. 1102-1103.) It found that the husband had not acted maliciously, but awarded the wife $284,087 in lost appreciation. (*Id*. at p. 1103.) The husband appealed, arguing that "the award of wife's share of profits lost by his violation of the injunctive order constituted a form of punitive damages." (*Ibid*.) The appellate court rejected this argument, stating that the remedy paralleled the one provided in another statute for breach of a spouse's fiduciary duty involving asset transfer that impairs the other spouse's undivided one-half interest. (*Ibid*., citing § 1101, subd. (a).)

As a threshold matter, Stanley cited no authority that a trial court is mandated to order reimbursement for the violation of an ATRO. Rather, we review an order on a reimbursement claim for abuse of discretion. (See, e.g., *In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1124-1125.) Where the trial court's exercise of discretion is based on the facts of the case, it will be upheld "as long as its determination is within the range of the evidence presented." (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 670.)

*McTiernan* instructs that the violation of an ATRO need not be malicious to warrant reimbursement. (*McTiernan*, *supra*, 133 Cal.App.4th at pp. 1102-1103.) There, the improper sale of community assets by the husband resulted in a large loss to the wife. (*Ibid*.) Here, in contrast, the trial court found that *both* parties made unauthorized distributions of about equal amount, but declined to order reimbursement to either party because neither party unreasonably benefited and the distributions were reasonable or necessary. Stanley did not challenge the trial court's finding that he had made an unauthorized distribution and he has not demonstrated how the trial court's decision to essentially treat the violations as a "wash" amounted to an abuse of discretion.

17

On this record we cannot conclude that the trial court abused its discretion in denying Stanley's request for reimbursement.

## V. *Retroactive Retirement Payments*

A. Facts

In the April 2010 partial judgment, the trial court awarded Stanley "[o]ne-half of the community interest in [Maria's] retirement benefits and accounts, including but not limited to her [San Diego County Employees Retirement Association (SDCERA)]." In his trial brief, Stanley claimed that an issue to be litigated included his community property interest in Maria's SDCERA. He argued that Maria should be ordered to pay him his share of the $4,222 monthly benefit for 17 months.

After the court issued its intended statement of decision, Maria filed an objection thereto stating that in its attachments to the intended statement of decision the court "included the entirety of [her] SDCERA retirement as income to [her] and failed to include any portion of the SDCERA retirement to [Stanley]. Pursuant to the Partial Judgment, filed April 2, 2010, [Stanley] has been awarded '[o]ne-half of the community interest in [Maria's] . . . SDCERA." Accordingly, Maria represented that she was in SDCERA for 9.6 years, that she was married to Stanley for six of those years, which equaled 62.5 percent and that Stanley's portion would be half of that, or 31.25 percent, which amounted to $1,319 per month to Stanley.

The court held a hearing on the parties' objections to its intended statement of decision. Maria's counsel represented to the court that the parties had reached a stipulation in relation to Maria's objection about the child support and "regarding the

18

division of retirement." Thereafter, Maria's counsel represented that as to Maria's objections "regarding the recalculation of child support, and the issue of [Stanley] receiving a portion of [Maria's] SDCRA [*sic*] retirement" that the parties agreed "as of August 1st, 2010, counsel will meet and confer and recalculate child support on the basis that [Stanley] will be receiving" about "$1,319 per month from [Maria's] SDCRA [*sic*] retirement." In its order after the hearing the court commenced Stanley's SDCERA retirement payments of about $1,319 per month effective August 1, 2010, and stated that the parties taxable income for purposes of child support would be adjusted accordingly.

B. Analysis

Stanley asserts the trial court erred when it did not award him retroactive SDCERA payments. He claims that Maria received a windfall of at least $799 a month for 20 months (December 2008 to July 31, 2010) or $15,980. Maria responds, among other things, that Stanley waived this issue when his counsel stipulated in open court that Maria's monthly SDCERA benefit would be reduced "as of August 1, 2010." Stanley asserts that Maria has mischaracterized the record and that this agreement was the result of his "objection number 1" to the intended statement of decision. We agree with Maria.

Stanley is incorrect that the stipulation pertained to *his* objection number one. The record clearly indicates that the stipulation addressed Maria's objection regarding how child support should be calculated taking into consideration that Stanley would be receiving a portion of her SDCERA retirement. Apparently based on the parties' stipulation that Stanley would begin receiving $1,319 per month starting August 1, 2010 from Maria's SDCERA retirement account, the court commenced Stanley's SDCERA

19

retirement payments of about $1,319 per month effective August 1, 2010. Accordingly, we agree with Maria that Stanley waived any alleged error in its division of Maria's SDCERA retirement under the doctrine of invited error. (*Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121.)

## VI. *Attorney Fees*

A. Facts

In July 2009, the trial court awarded Stanley $14,472.43 out of the proceeds from the sale of the family home and reserved jurisdiction over the allocation of this payment. After trial, Stanley requested attorney fees under section 2030, citing his need and the disparity in income between the parties. Stanley's counsel represented that each party expended about $80,000 in attorney fees, for a total of $160,000 and that Stanley should be responsible for 30 percent of the total, or $48,000, based on his imputed income. Stanley stated that he sought a minimum award of $32,000.

In its intended statement of decision, the trial court denied any further award and ordered that each party bear their own attorney fees and costs stating it "is not persuaded, under the current circumstances, that directing [Maria] to make a further contribution to [Stanley's] attorney fees and costs would be just and reasonable." Stanley objected to this portion of the intended statement of decision claiming the court's analysis was incomplete because it failed to consider: the section 4320 factors; his failure to receive any temporary spousal support; that he used his credit card to pay his fees; and the disparity in income between the parties. The trial court overruled the objection.

20

B.  Analysis

Stanley claims the trial court erred when it denied his request for a need based attorney fee award under section 2030.  Specifically, he contends the record does not reflect what the court considered and the trial court failed to make factual findings necessary to resolve disputed material issues.  We reject his contentions.

The trial court may order one party to pay the other party's attorney fees "if necessary based on the income and needs assessments."  (§ 2030, subd. (a)(1).)  In assessing ability to pay, the court is not restricted to salary alone, but may consider "all the evidence concerning the parties' income, assets and abilities."  (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768.)  An award under section 2030 is proper when it is "just and reasonable under the relative circumstances of the respective parties."  (§ 2032, subd. (a).)  In determining what is just and reasonable the court may also consider any other factors including such matters as earning capacity, age and health, and the balance of the hardships to each party.  (§§ 2032, subd. (b), 4320.)

Because a trial court has broad discretion in ruling on a motion for fees and costs, we will not reverse absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order.  (*In re Marriage of Sullivan*, *supra*, 37 Cal.3d at pp. 768-769.)  Nonetheless, "the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion."  (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 827.)

21

We review the entire record to determine whether the trial court properly considered the statutory factors. As discussed above, the trial court addressed all of the section 4320 factors in that portion of the intended statement of decision regarding spousal support. (Pt. II.B., *ante*.) The court was not required to reiterate those same findings in regard to attorney fees and we similarly decline to repeat them here. The trial court necessarily considered all of its previous findings when it concluded that further contribution by Maria to Stanley's attorney fees and costs "would [not] be just and reasonable." (§ 2032, subd. (a).) Stanley's singular focus on the income of the parties is insufficient to show the trial court abused its discretion when it declined Stanley's request for a further contribution.

Finally, while Stanley asserts the trial court did not make factual findings necessary to resolve disputed material issues, he failed to explain what factual findings the court failed to make. On this record, we conclude the trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to her costs on appeal.


McINTYRE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

23