Filed 1/15/16  Marriage of Scott CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of BYRON and ANITA G. SCOTT. | B263480 |
| | (Los Angeles County Super. Ct. No. BD606908) |
| BYRON SCOTT, Respondent, v. ANITA G. SCOTT, Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed in part; reversed in part.

Trope and Trope, Thomas Paine Dunlap and James A. Durant for Appellant.

Law Office of Caryn H. Nguyen, Caryn Hong Thuy Nguyen; Law Offices of Kristen Martin and Kristen Martin for Respondent.

\* \* \* \* \* \*

In this marriage dissolution action, Anita G. Scott (Anita)[1] appeals an order of temporary spousal support and attorney fees, contending the support award improperly required her to deplete her portion of a community property asset, and the fee award purportedly prejudged the reasonableness of future fee requests. We reverse the portion of the order awarding temporary spousal support but affirm the award of attorney fees.

## BACKGROUND

Anita and Byron Scott (Byron) were married on February 8, 1985, and separated either June 1, 2013 (according to Byron), or April 15, 2014 (according to Anita). Byron is the head coach of the Los Angeles Lakers NBA (National Basketball Association) team and his current income from that position is an average of $312,500 per month. He also receives $26,661.86 biweekly from his former position as head coach of the Cleveland Cavaliers NBA team, which the parties agree is community property.

Anita filed a request for order (RFO) on December 31, 2014, seeking temporary spousal support, attorney fees, forensic accountant fees, and an accounting for the funds Byron received from the Cleveland Cavaliers. To support her spousal support request, Anita estimated her monthly expenses at $35,095, not including certain unknown expenses. She acknowledged Byron provided her $12,000 a month for personal expenses, but she contended that did not include her use of high-limit credit cards, expenses paid directly by Byron, or expenses for housing, household items, travel, medical costs, groceries, and home furnishings and décor. She also requested the court to order Byron to pay her one-half of the Cleveland Cavaliers income. For the attorney fee request, Anita sought $100,000 in addition to $25,000 Byron had already paid, and $20,000 for forensic accounting fees.

In response, Byron recognized the marital estate was worth $6 million to $7 million, and he was willing to stipulate he had the ability to pay reasonable spousal support and reasonable attorney fees. He claimed Anita exaggerated their marital lifestyle and she lived "comfortably" on $12,000 per month for personal expenses.

---

[1] We refer to the parties by their first names for convenience and clarity.

2

According the Byron, he continues to pay this amount to Anita postseparation along with paying an additional $6,000 per month for her fixed living expenses such as her mortgage, property taxes, insurance, utilities, cable, car lease, and phone bills. Byron also contested Anita's request for attorney and accounting fees.

In reply, Anita disputed Byron's claim she lived off of $18,000 per month during their marriage. She increased her request for support to either $123,641 per month (without the Cleveland Cavaliers income) or $145,686 per month (with the Cleveland Cavaliers income) based on "DissoMaster" calculations derived from Byron's monthly income. She also increased her attorney fees request to $180,000.

At the hearing on the RFO, Byron requested that "the court keep the current status quo, which is the 12,000 that [Byron] has been giving [Anita], plus paying all of the bills, with respect to her living expenses." Anita maintained her request for support along the lines of the DissoMaster calculations and again requested half of the Cleveland Cavaliers income be paid to her.

The trial court found the following facts undisputed, and the parties have not challenged those findings on appeal: "1) the parties were married at least 28 years (although the date of separation is in dispute); 2) [Byron] is an Extraordinarily High Earner; 3) the parties lived an Upper Class Marital Lifestyle; 4) [Anita] has not been employed throughout the marriage; 5) [Byron] is currently employed as the Coach of the Los Angeles Lakers and receives a salary in the seven figures; 6) [Byron] has stated in papers that he is able to pay any reasonable amount of [temporary spousal support]; 7) [Byron] receives $26,661.86 bi-weekly from Cavaliers Holdings, Inc. for work performed during the marriage, which is agreed to be community property; and 8) the parties have no minor children, but continue to support in part their three adult children."

It awarded temporary spousal support as follows (we have italicized the portion relevant to this appeal): "1) *[Byron] shall pay to [Anita] one-half the net amount which he receives from the gross amount of $26,661.86 paid to him by Cavaliers Holding, LLC on a biweekly basis, with payment to be made within ten (10) calendar days of receipt of each such payment; [Anita] shall be attributed with half the monthly gross amount paid*

by Cavaliers Holding, LLC for an average gross monthly attribution of $28,882 and *this shall be deemed a distribution of community property funds*; 2) [Byron] shall continue to pay the following expenses . . . : a) mortgage payments on the residence occupied by [Anita] and on their daughter's condominium; b) homeowners association fees and homeowners insurance on both properties; c) property taxes on both properties; d) gas, water and power on [Anita's] residence; e) maintenance on that residence, including cable, internet, home telephone, expenses paid to others for carpet, window and household cleaning, repairs and maintenance; f) personal property floater insurance; g) medical insurance; h) lease on the Range Rover driven by [Anita]; i) car insurance on the Range Rover; j) license and registration fees on the Range Rover; k) life, health and accident and earthquake insurance as provided as of the earliest alleged date of separation; and l) rent on their son's apartment. . . .  The Court finds that these amounts are sufficient to fulfill the reasonable needs of [Anita] given the marital standard of living, and are well within the ability to pay of [Byron]."

On Anita's request for attorney fees, the court noted that "this case is still in the very early stages, and that the parties have spent an inordinate amount of time and money on preliminary matters that might best have been resolved through negotiation between counsel," but it ordered Byron to pay $75,000 to Anita's attorneys in order to create a "level playing field."  The court warned the parties about submitting future excessive fee requests (again, we have italicized the portion relevant to this appeal):  "This Court notes that it will not consider further requests for attorney's fees unless and until a showing has been made that the fees incurred have been reasonably spent.  For example, the fees incurred to date by [Anita's] counsel include many instances of inter-office conferences and multiple-attorney involvement in meetings which are not all within the Court's perception of reasonability of fees. *Evidence presented to the Court in the future of fees incurred in connection with fee requests should not include such occurrences.*  On the other hand, if large amounts of attorney's fees are incurred as the result of the other party's failure to cooperate and act reasonably in this matter, the Court will take that fact into consideration in evaluating any future attorney's fee requests."  The court denied

4

Anita's request for accounting fees without prejudice and ordered Byron to provide copies of checks and money transfers from the Cleveland Cavaliers.

Anita timely appealed the order, specifically excluding any challenge to the amount of attorney fees.

## DISCUSSION

### 1. *Temporary Spousal Support Award*

Per Family Code section 3600, during the pendency of a marriage dissolution proceeding "the court may order . . . either spouse to pay any amount that is necessary for the support of the other spouse . . . ." "Whereas permanent spousal support 'provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property,' temporary spousal support 'is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations.'" (*In re Marriage of Winter* (1992) 7 Cal.App.4th 1926, 1932 (*Winter*); see *In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29.) "'[A]n award of temporary spousal support is within the sole discretion of the trial court,' and will not be reversed unless it amounts to an abuse of discretion." (*Winter, supra*, at p. 1932.)[2]

This appeal boils down to the parties' divergent interpretations of the court's spousal support order. Anita argues the trial court awarded her one-half of Byron's community property income from the Cleveland Cavaliers as part of her temporary spousal support award, which she claims was improper because community property cannot be part of an award of temporary spousal support. Byron contends the court did *not* award Anita her portion of his monthly Cleveland Cavaliers income as part of temporary spousal support at all. Instead, he argues the court limited Anita's temporary spousal support to the expenses it ordered Byron to pay, and the Cleveland Cavaliers

---

[2]    Anita suggests our review is de novo because the issue involves the interpretation of a statute based on undisputed facts. We need not address this contention because even under the more lenient abuse of discretion standard, reversal is required.

5

payment was simply a separate award of community property in response to Anita's request for the court to award that amount to her.

We think Anita has the better interpretation for several reasons. First, the court expressly labeled Anita's half of the Cleveland Cavaliers payment as temporary spousal support, even though it also labeled it community property. Second, the total spousal support award including the Cleveland Cavaliers payment roughly approximated Anita's initial $35,095 request for support.[3] As Byron demonstrates in a comparison chart in his brief, he was ordered to pay fixed expenses in the amount of $12,550, plus 11 expenses with "unknown" amounts. Anita requested all of those expenses in her initial $35,095 request. That left $22,545 in Anita's request mostly for variable personal expenses such as food, clothing, personal beauty care, incidentals, medical costs not covered by insurance, gas and parking, donations, family expenses, and vacation costs. The $26,000 Cleveland Cavaliers community property payment would be more than enough to cover that amount. Third, the court did not order Byron to continue paying the undisputed $12,000 per month he was already paying Anita for personal expenses in addition to other fixed expenses, even though Byron's attorney requested the court do so in order to "keep the current status quo."

Conversely, if Byron's interpretation of the order were correct, the court's award of expenses was insufficient to maintain the status quo at the parties' marital standard of living. The court recognized in its order that a spousal support award should "maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations." In awarding temporary support, the court may consider the "'big picture' concerning the parties' assets and income available for support in light of the marriage standard of living." (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.) Further, "[t]rial courts may properly look to the parties' accustomed marital lifestyle as the main basis for a

---

[3]    Anita does not contend on appeal the court should have awarded her the DissoMaster-based amounts of $123,641 per month or $145,686 per month.

6

temporary support order." (*Ibid.*) Although the parties submitted conflicting evidence regarding their marital standard of living, Byron conceded Anita had *at least* $12,000 per month in personal expenses that he paid. Yet, under his interpretation of the court's order, the court awarded *no* amount for Anita's personal expenses, including the most basic living necessities such as food and clothing. It was undisputed Anita did not work during the parties' long marriage, and the court made no finding that she could generate income to cover these expenses. Thus, in order to make an award that would maintain the status quo, the court necessarily had to treat the Cleveland Cavaliers community property payment as part of Anita's spousal support award.

Because we have found Anita's interpretation of the court's order correct, we must conclude the court abused its discretion in including community property assets as part of her temporary spousal support award. Community property assets may not be part of a temporary spousal support award; instead, "those funds must continue to be characterized as community property until the final property division, at which point both parties will be credited with community funds used by or distributed to the other. Any other interpretation would contravene one of the basic purposes of temporary support, which is to preserve community assets pending trial." (*Winter, supra*, 7 Cal.App.4th at p. 1934.) For example, in *In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, the trial court ordered the husband to pay temporary spousal support out of an account containing the proceeds of a sale of a community real property asset. The wife objected, arguing this retroactively reduced the husband's temporary support obligation by half, which impermissibly required her to pay half of her own support. (*Id.* at p. 1317.) The Court of Appeal agreed: """It makes no more sense to reduce wife's spousal support because she received her rightful share of the community property than it would to increase wife's spousal support because husband received his rightful share of the community property . . . .""" (*Id.* at p. 1318.) As in *Williamson*, by requiring Anita to use her share of the Cleveland Cavaliers community property income as temporary spousal support, the trial court contravened the purpose of temporary spousal support to preserve community

7

assets and impermissibly reduced Anita's spousal support because she received her rightful share of a community property asset.

We therefore reverse and remand with instructions for the trial court to make a new determination of temporary spousal support excluding Anita's share of Byron's Cleveland Cavaliers community property income. To be clear, nothing in this opinion precludes the court from awarding Anita her share of Byron's Cleveland Cavaliers community property income, but that payment may not constitute any portion of Anita's temporary spousal support award.

## 2. *Attorney Fee Award*

Pursuant to Family Code section 2030, subdivision (a)(1), the court may award "whatever amount is reasonably necessary for attorney fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." Anita does not challenge the trial court's fee award itself. Instead, she claims the trial court violated her due process rights when it cautioned her about excessive billing for interoffice conferences and multiple-attorney meetings, warning that "[e]vidence presented to the Court in the future of fees incurred in connection with fee requests should not include such occurrences." She claims that constituted a "blanket ruling that no inter-office conferences of attorneys, and no meetings with [the] client, experts or witnesses involving more than one attorney, can be reasonably necessary."

We review the award of attorney fees for abuse of discretion (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283), and we find none. Read in context, the court's order did not preclude Anita from seeking future fees or limit the types of compensable work she could include in future fee requests, including interoffice and multiple-attorney meetings. Instead, the court's comments were focused on *excessive* billing. In the immediately preceding sentence, the court noted that not *all* the interoffice conferences and multiple-attorney meetings were reasonable, contemplating that some would be. Earlier in its order, the court expressed concern about the amount of time attorneys had already spent in the case, noting "this case is still in the very early stages, and that the parties have spent an inordinate amount of time and money on preliminary

8

matters that might best have been resolved through negotiation between counsel."
Against this backdrop, the court's warning about future fee requests fell well within its
inherent authority to manage the proceedings. (See *Nickolas F. v. Superior Court* (2006)
144 Cal.App.4th 92, 110 ["All courts have inherent powers that enable them to carry out
their duties and ensure the orderly administration of justice. The inherent powers of
courts are derived from California Constitution, article VI, section 1, and are not
dependent on statute."]; see Code of Civ. Proc., § 128, subd. (a)(3) [giving courts the
power "[t]o provide for the orderly conduct of proceedings before it"].) The court's order
cannot be reasonably interpreted to preclude Anita from seeking fees for any time spent
on the case in the future.

## DISPOSITION

The trial court's order for temporary spousal support is reversed and the matter
remanded for further proceedings consistent with this opinion. The trial court's award of
attorney fees is affirmed. Appellant is awarded costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.


9