Opinion
 

 KING, J.
 

 In this case we hold that one schedule of guidelines for spousal support may not be used for fixing both temporary and permanent spousal support and that an in-kind division of a community coin laundry business is not required, despite the fact that the business consists of washers and dryers placed in various apartment complex locations.
 

 Dorothy M. Burlini appeals from an interlocutory judgment of dissolution of her marriage to Narciso L. Burlini, challenging the portions of the judgment awarding spousal support to her and fixing the value of the coin laundry business and awarding it to her husband as part of his share of the community property. We affirm the judgment.
 

 
 *68
 
 The parties were married in October 1955 and separated just over 24 years later in December 1979. In 1963 Narciso started the “Bur-Lin” coin laundry business in his spare time. Over the years the business became a full-time enterprise. At the time of the parties’ separation, approximately 500 washers and dryers were operated in various locations, primarily in apartment complexes. Narciso installed and serviced the machines, most of which were old and required considerable maintenance and repair. He also regularly changed and serviced their locks, and dealt with the owners of the premises on which the machines were located. Dorothy was the bookkeeper for the business, handled telephone calls for repairs, assisted in cleaning laundry rooms and equipment, and performed minor repairs on the machines. Excluding the coin laundry business, community property was valued at more than $480,000 at trial.
 

 The trial judge ordered that Narciso pay Dorothy spousal support of $850 per month for three months and thereafter pay $700 per month for a period of four years (until Feb. 1,1985), with the court reserving jurisdiction over the issue of spousal support thereafter. Dorothy contends this order was an abuse of discretion because the support schedules adopted by the Santa Clara Superior Court mandated a higher amount, and that no evidence was presented which justified a jurisdictional stepdown.
 

 The court was vested with broad discretion in fixing the amount of spousal support at trial.
 
 (In re Marriage of Morrison
 
 (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41].) No abuse of discretion is evident. The court’s comments at the dissolution hearing demonstrated the court did consider the applicable factors set forth in Civil Code section 4801, including Dorothy’s ability to work, her projected assets, her income from community assets awarded to her including an income producing duplex, and the time required for her to acquire a future education and likely become self-supporting, On these facts the trial judge properly retained jurisdiction in the event Dorothy can demonstrate a further need for spousal support when the jurisdictional step-down occurs. (See
 
 In re Marriage of Epstein
 
 (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165];
 
 In re Marriage of Richmond
 
 (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381].)
 

 A reading of the Santa Clara Superior Court guidelines for spousal support does not disclose whether they are utilized only for temporary orders, or whether they are also used for the fixing of so-called “permanent” spousal support. One schedule of guidelines for spousal support cannot be used for both purposes, since the purpose of a temporary order of spousal support is far different than that of a permanent order. Temporary spousal support is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations. (Adams & Sevitch, Cal. Family Law Practice
 
 *69
 
 (4th ed. 1983) [§ N:3].) The statutory authorization for temporary spousal support is found in Civil Code section 4357.
 

 Spouses residing together have one family income whether one or both spouses are employed. They develop a standard of living based upon that income. Separation of the parties results in no change in that income, but their total expenses increase because of the additional expenses incurred by the party who leaves the family home. That person must incur new expenses, including those for shelter, utilities, and furnishings. Separation may also result in an increase of some expenses for the spouse remaining in the family residence. The temporary spousal support order is an attempt, pending trial, to allocate the family income equitably between the parties, considering their individual incomes and expenses. Many California courts have adopted guidelines for temporary support. These are nothing more than a method of dividing the family income proportionately by adopting a schedule, in chart form, based upon either the net income of the person being asked to pay support or the net incomes of both parties. Guidelines for temporary spousal support generally include a statement such as that contained at page 15 of the Uniform Domestic Relations Local Rules for Bay Area Superior Courts that “This schedule shall
 
 not
 
 be used as a guideline for long-term spousal support at trial or thereafter.”
 

 The purpose of permanent spousal support is not to preserve the preseparation status quo but to provide financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property. In determining spousal support at trial the court is bound to apply the factors enumerated in Civil Code section 4801. For these reasons, Dorothy’s reliance on the Santa Clara Superior Court spousal support schedule is misplaced. Such a schedule can only be used to fix temporary support since the factors to be considered in determining permanent spousal support are prescribed by Civil Code section 4801.
 

 Nothing stated above should be interpreted as discouraging the adoption of schedules for temporary support and their use as guidelines by trial courts. To the contrary, their use should be encouraged to help lawyers and litigants predict more accurately what temporary support order would be issued if the case proceeded to a contested hearing. Although guidelines represent a proportional division of the family income, they are in graph form and easily understood, even by pro per litigants. They promote consistency in the temporary orders issued in a department with a busy domestic relations motion calendar, and are especially valuable in achieving comparable orders under similar financial facts in those courts where multiple departments hear such motions.
 

 This valuable tool permits lawyers and clients to avoid the need for hearings and the emotional and financial expense they involve, and therefore promotes
 
 *70
 
 judicial economy by avoiding thousands of such hearings in California courts each year. Guidelines for temporary support originated with the Marin County Superior Court and, over the past 10 years, have been adopted by many courts, including most of the larger superior courts in California.
 

 Although the adoption of guidelines for temporary support is to be encouraged, it should be emphasized that they are
 
 only
 
 guidelines to be utilized in cases with no unusual facts or circumstances. If, for example, the tax consequences contemplated by the guidelines, e.g., temporary spousal support not to be taxable to the recipient, are incorrect, or a party is paying spousal or child support from a prior relationship, the guidelines should be applied as modified by such facts or circumstances. This would also be true where there are unusually large house or other monthly payments, special expenses are being incurred for educational, medical, or dental expenses of children, child care expenses are incurred to permit a custodial parent to work (or complete education or training), or there are exceptional medical or dental expenses, or other special needs of a spouse or child. Indeed, the facts or circumstances of a particular case might well be so unusual that a court’s guidelines for temporary support would be totally inapplicable.
 

 Dorothy next contends that the court erroneously refused to grant her request for an “in kind” award of half of the coin laundry business. She relies on the equal division requirement of Civil Code section 4800. However, section 4800, subdivision (b)(1), permits an award of any asset to one party “[wjhere economic circumstances warrant . . . .” Courts have discretion to reject “strict ‘in kind’ divisions” in order to avoid financial inequalities
 
 (In re Marriage of Connolly
 
 (1979) 23 Cal.3d 590, 603 [153 Cal.Rptr. 423, 591 P.2d 911]), and may reject such a division of a family business where it would impair the business.
 
 (In re Marriage of Brigden
 
 (1978) 80 Cal.App.3d 380, 391-392 [145 Cal.Rptr. 716].)
 

 The determination whether “economic circumstances warrant” is entrusted to the sound discretion of the trial court. The issue in this action is whether the trial court abused its discretion. “Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.”
 
 (In re Marriage of Connolly, supra,
 
 23 Cal.3d 590, 598.)
 

 We conclude there was no abuse of discretion. There was substantial evidence in the present case that an equal division of the family business would have been destructive. Narciso’s certified public accountant and appraiser both testified he was the “key person” running the business, because he serviced the machines and had primary contact with the owners of the prop
 
 *71
 
 erties where the machines were located. This testimony, and the evidence that extensive labor was required to keep the aged machines in working order, supported the court’s conclusions that Dorothy could not operate the business without taking in a partner to perform Narciso’s functions and that she would ultimately “destroy” the business. (See
 
 In re Marriage of Smith
 
 (1978) 79 Cal.App.3d 725, 751 [145 Cal.Rptr. 205] [no reasonable probability of award of sign-making business to wife where evidence demonstrated that husband had necessary technical knowledge and experience but wife did not]; compare
 
 In re Marriage of Brigden, supra,
 
 80 Cal.App.3d at p. 392 and fn. 6 [fungible shares of stock easily divided in half, therefore no impairment of value by in kind distribution].)
 

 Dorothy next contends that the trial court abused its discretion in fixing the fair market value of the coin laundry business at $50,000. Dorothy testified that in her opinion the business was worth $150,000 to $200,000, while Narciso’s appraiser testified that three different valuation methods produced values of $21,242, $42,122, and $50,000. The court’s resolution of the evidentiary conflict between Dorothy’s testimony and that of the professional appraiser cannot be disturbed on appeal.
 
 (In re Marriage of Mix
 
 (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)
 

 Dorothy’s final contention is that she was denied business records necessary to allow her to obtain and present expert testimony on the value of the business. The record indicates that any failure in this regard was due to Dorothy not fully pursuing her rights to pretrial discovery. Moreover, during trial the court said, “I think that you produced all of the evidence and all of the possible relevant considerations that could be taken into consideration in arriving at a proper disposition.” Counsel did not reply. Thus Dorothy impliedly waived any assertion that it was error to determine the value of the business without her presentation of an appraiser’s testimony. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 272 at p. 4260; see generally
 
 Kauffman
 
 v.
 
 De Mutiis
 
 (1948) 31 Cal.2d 429, 432 [189 P.2d 271].)
 

 The judgment is affirmed.
 

 Low, P. J., and Haning, J., concurred.
 

 A petition for a rehearing was denied June 10, 1983, and appellant’s petition for a hearing by the Supreme Court was denied July 13, 1983.