Filed 12/7/15  Marriage of Mitchell CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of CHRISTINE M. and DAVID P. L. MITCHELL. | |
| CHRISTINE M. MITCHELL, Respondent, v. DAVID P. L. MITCHELL, Appellant. | E060112 (Super.Ct.No. IND1201277) OPINION |

APPEAL from the Superior Court of Riverside County.  Otis Sterling III, Judge.

Affirmed.

Iris Joan Finsilver for Appellant.

Sheila A. Williams and Laura J. Fuller for Respondent.

1

Appellant David P. L. Mitchell appeals from an order denying his application for temporary spousal support and attorney fees in an action for dissolution of marriage initiated by his now ex-wife, Christine M. Mitchell.[1] We conclude the family court did not abuse its discretion by denying David's requests and affirm.

I.

FACTS

Christine initiated this dissolution action in July 2012. Almost one year later, David filed a request for temporary spousal support from Christine (according to the family court's guidelines), and for $15,000 in attorney fees and costs. In a supporting declaration, David stated he was unable to pay his living expenses and was forced to live on credit cards and withdrawals from retirement accounts. In his income and expense declaration, David stated his monthly gross income from retirement funds was $7,741.63, and Christine's monthly gross income was $20,000. David estimated his average monthly expenses were $9,118, which included $1,200 in out-of-pocket medical expenses and $1,867 for payments on a home equity line of credit and a home owner's insurance policy for the community home.

In her response, Christine consented to an award of spousal support (according to the family court's guidelines), but argued each party should pay their own attorney fees. Christine requested an order directing the lines of credit on the home be paid from two

_____

[1] To avoid confusion, we will refer to the parties by their first names. We mean no disrespect. (See *In re Marriage of Honer* (2015) 236 Cal.App.4th 687, 689, fn. 1.)

2

community E*TRADE equity accounts with a combined balance of $143,000. Christine stated David removed $75,000 from his retirement accounts in the months before he filed his request for spousal support, and David had been living above his means since the marital separation. Christine declared her average monthly gross income was $14,974, and her average monthly expenses were $13,056.

David replied Christine's monthly income was much higher than she reported because she received a $55,408 bonus, and he declared Christine's true average monthly income was $20,639.27.

At the hearing on the request for temporary spousal support and attorney fees, the family court stated its intention of determining whether an award should be made by looking at the parties' income and expense declarations, "subject to reallocation at a later date." David's attorney argued the court should look beyond Christine's income declaration and consider her bonus. "My feeling would be that the Court [should] amortize the total gross amount of $172,496 over a 12-month period because that really reflects what her true income is."

Christine's attorney argued the court should not consider the bonus in determining temporary spousal support payments in the future because it was speculative whether she would earn another bonus the next year. Instead, counsel argued the family court should retain jurisdiction and make adjustments in the future should Christine earn another bonus. Moreover, counsel argued David's true monthly income, when factoring in his withdrawals from retirement accounts, was $14,574. Because David's monthly income was equal to Christine's, counsel argued an order of spousal support would be unfair.

3

David's attorney responded the family court should not consider David's withdrawals from retirement accounts when determining his monthly income because, assuming those retirement funds were later characterized as community assets, Christine would be credited for those withdrawals when the community's assets are divided.

The family court inquired into Christine's allegations that David absconded with valuable coin and wine collections, and that he purchased a $60,000 vehicle despite Christine's offer that he use one of the three community vehicles. David denied taking the coin collection, and explained he only took some of the wine collection, which Christine conceded. With respect to the purchase of the vehicle, David denied that Christine offered him one of the community vehicles, and he told the court he purchased the vehicle on credit with no money down. The court concluded David had access to sufficient assets to live on temporarily and make an expensive vehicle purchase, so it denied his request for temporary spousal support and attorney fees. The court retained jurisdiction to make a permanent determination of support at trial, at which time the court could take into consideration any additional bonus earned by Christine.

With respect to the line of credit on the home and the insurance payments, Christine's attorney argued the fairest solution was to liquidate the community E*TRADE investment account and use it to pay off the line of credit and, further, to direct David to continue paying the insurance policy until the final division of assets. David's attorney responded Christine continued to live in the community home and therefore she should make payments on the line of credit and the insurance policy. The

court directed the E*TRADE account be liquidated to pay off the line of credit, and that Christine pay off the remaining amount owed.

David timely appealed.

## II.

## DISCUSSION

A. *The Family Court Did Not Abuse Its Discretion by Denying David's Request for Temporary Spousal Support*

1. Applicable Law and Standard of Review

During the pendency of a proceeding for marital dissolution, the family court may order temporary spousal support in "any amount that is necessary for the support of the other spouse." (Fam. Code,[2] § 3600.) "Temporary spousal support allows the parties to maintain living conditions and standards pending trial and division of the community property and obligations. [Citation.] It results from the mutual duty of support inherent in marriage. (§§ 720 [spouses have obligations of mutual support] & 4300 [spouses shall support each other].)" (*In re Marriage of Jacobsen* (2004) 121 Cal.App.4th 1187, 1192.)

An order on a request for temporary spousal support is immediately appealable. (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 26, fn. 2.) A temporary spousal support order is reviewed for abuse of discretion. (*In re Marriage of MacManus* (2010) 182 Cal.App.4th 330, 337.) "'Subject only to the general "need" and "the ability to pay," the amount of a temporary spousal support award lies within the court's sound discretion,

---

[2] All further statutory references are to the Family Code.

5

which will only be reversed on appeal on a showing of clear abuse of discretion. [Citations.]'" (*In re Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 773.)

### 2. Failure to Use Guidelines

David contends the family court erred by not awarding temporary spousal support according to the court's guidelines. We disagree.

The appellate courts have generally supported the use of temporary spousal support guidelines adopted by family courts. "The use of such guidelines 'should be encouraged to help lawyers and litigants predict more accurately what temporary support order would be issued if the case proceeded to a contested hearing. . . . They promote consistency in the temporary orders issued in a department with a busy domestic relations motion calendar, and are especially valuable in achieving comparable orders under similar financial facts . . . .'" (*In re Marriage of Winter* (1992) 7 Cal.App.4th 1926, 1933, quoting *In re Marriage of Burlini* (1983) 143 Cal.App.3d 65, 69.)

However, when ruling on a request for temporary spousal support, the family court is not bound by any statutory guidelines or locally adopted support guidelines. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 ["The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount"]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 5:163, p. 5-85 ["Although concededly a 'valuable tool,' standardized temporary spousal support schedules are *only guidelines* and, therefore, are *not binding* on the court"].) An award of temporary spousal support is correct as long as it properly reflects the supported spouse's need and the supporting spouse's ability to pay, and as long as the award achieves the

"benchmark" of spousal support—maintaining the status quo pending a final division of property and a permanent support order. (*In re Marriage of Wittgrove*, at p. 1328.)

Although both parties here agreed to an award of temporary spousal support according to the family court's guidelines, the family court was justified in departing from the guidelines given the somewhat unusual facts in this case. (*In re Marriage of Burlini*, *supra*, 143 Cal.App.3d at p. 70 ["Although the adoption of guidelines for temporary support is to be encouraged, it should be emphasized that they are *only* guidelines to be utilized in cases with no unusual facts or circumstances"].) As will be discussed in the following sections, the family court was tasked with determining need and ability to pay based on evidence of David's withdrawals from retirement accounts, his recent purchase of an expensive vehicle, and Christine's bonus. The court did not abuse its discretion by departing from the guidelines.

> 3.    David's Retirement Accounts

David argues the family court abused its discretion by considering his retirement accounts as available income when determining his need for temporary spousal support. According to David, this was erroneous because the court essentially directed him to invade a community asset that would have to be divided in a final decree.[3] We find no abuse of discretion.

---

[3] David does not challenge the family court's order directing the community E*TRADE accounts be liquidated to pay off the line of credit on the community home.

David concedes there is no precise definition of income for purposes of temporary spousal support, but he suggests this court look to section 4058. That section defines income solely for purposes of *child* support, and David cites no authority for the proposition that application of section 4058 to temporary *spousal* support would be appropriate. (Cf. *In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1445-1446 [questioning the relevance of § 4058 to an award of permanent spousal support under § 4320].) As noted, the family court is not bound by any statutory guidelines or definitions when awarding temporary spousal support. (*In re Marriage of Wittgrove*, *supra*, 120 Cal.App.4th at p. 1327.)

"[I]n exercising its broad discretion, the court may properly consider the 'big picture' concerning the parties' assets and income available for support in light of the marriage standard of living. [Citation.] . . . 'Ability to pay encompasses far more than the income of the spouse from whom temporary support is sought; investments and other assets may be used for . . . temporary spousal support . . . . [Citations.]'" (*In re Marriage of Wittgrove*, *supra*, 120 Cal.App.4th at p. 1327.) If a family court may properly consider investments for purposes of determining a spouse's ability to pay temporary spousal support, we see no reason why the court may not consider those forms of assets— including retirement accounts—when determining a spouse's *need* for temporary spousal support.

David's reliance on *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373 (Fourth Dist., Div. Two) does not persuade us otherwise. There, this court held a family court may only order a *supporting spouse* to use income from vested retirement accounts

to pay support payments, and may not require the supporting spouse to invade the principal of those investments. (*Id*. at p. 1380.) Here, the family court did not require David to pay Christine with his retirement accounts, but to *continue* using them to supplement his own regular retirement income.

David also contends the family court ignored the policy of preserving community assets until the time of trial. But that policy is not absolute. For example, upon service of the summons and petition for dissolution of marriage, both spouses are automatically restrained "from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, *except in the usual course of business or for the necessities of life*, and requiring each party to notify the other party of any proposed extraordinary expenditures at least five business days before incurring those expenditures and to account to the court for all extraordinary expenditures made after service of the summons on that party." (§ 2040, subd. (a)(2), italics added.) "Besides being a matter of common sense, these qualifiers [in the language from section 2040, subdivision (a)(2) we italicized] are mandated by a formidable body of constitutional law precluding the summary deprivation of property without due process, i.e., without notice and hearing." (*Gale v. Superior Court* (2004) 122 Cal.App.4th 1388, 1392.)

As long as David's use of community assets was limited to paying for necessities of life and not for extraordinary expenditures, and as long as the family court credited Christine for the reduction of community assets in the final decree, the court did not err

by requiring David to continue dipping into his retirement accounts to supplement his normal retirement income.**4**

        4.     David's Purchase of a Vehicle

According to David, the family court erred by placing great weight on his purchase of an expensive vehicle when determining his need for temporary spousal support. This portion of David's brief consists almost entirely of quotes from the record, and one paragraph of argument without any citation to relevant authority. The argument is therefore waived. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; Cal. Rules of Court, rule 8.204(a)(1)(B) [every brief must "support each point by argument and, if possible, by citation of authority"].)

Even if David did not waive this argument, it is unpersuasive. Although the family court spent some time discussing David's purchase of an expensive vehicle, we cannot say on this record that the family court placed *excessive* weight on that one factor. Moreover, the court was permitted to consider the "'big picture'" when determining David's need for temporary spousal support (*In re Marriage of Wittgrove*, *supra*, 120 Cal.App.4th at p. 1327), which certainly included David's ability to purchase a vehicle on credit. We find no abuse of discretion.

---

**4** For the same reasons, we reject David's argument the family court erred by directing him to live off his retirement accounts before those assets were classified as community or separate property, and without considering that Christine would have to be credited for David's withdrawals in a final decree. The family court did recognize it would have to make a "reallocation" in the final decree.

### 5. Christine's Bonus

Finally, David contends the family court erred by not considering a bonus Christine earned when determining her ability to pay temporary spousal support. Again, we find no abuse of discretion.

David cites decisions which held salary bonuses are properly considered when determining the amount of *permanent* spousal support under section 4320. (See, e.g., *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387; *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 46-50.) However, he concedes no published appellate decision has extended that practice to awards of *temporary spousal support*, and we have doubts whether it should. Temporary and permanent spousal support orders serve very different purposes. Whereas temporary spousal support serves to maintain the status quo of the party's lifestyle during the marriage pending a final decree, "'the purpose of permanent spousal support is not to preserve the preseparation status quo but to provide financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property.' [Citations.]" (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594.)

Even if potential, future salary bonuses are properly considered when determining ability to pay temporary spousal support, a family court should treat a potential bonus as it does imputed income. "In an appropriate case, the trial court may take into account either party's *earning capacity* as well as his or her actual income in fixing temporary spousal support . . . but subject to the same limitations on imputing income that apply in adjudicating 'permanent' spousal support—i.e., there must be competent evidence that

11

the party sought to be charged with imputed income has both the *ability* and *opportunity to earn* the imputed income amount [citation]." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 5:159.5, p. 5-83.)

In this case, David presented no competent evidence that Christine was likely to earn another salary bonus, and the family court prudently deferred consideration of any future bonus until a final decree and award, if any, of permanent spousal support.

B. *The Family Court Did Not Abuse Its Discretion by Denying David's Request for Attorney Fees*

David contends the family court abused its discretion by denying his request for pendente lite attorney fees. As he did in the context of temporary spousal support, David contends the evidence clearly showed Christine's income far exceeded his own, and that the family court erred by considering his withdrawals from retirement accounts as income and by considering his purchase of an expensive vehicle when determining David's need. We find no abuse of discretion.

An order denying a request for pendente lite attorney fees is immediately appealable. (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1311.) "Under sections 2030 and 2032, a family court may award attorney fees and costs 'between the parties based on their relative circumstances in order to ensure parity of legal representation in the action.' [Citation.] The parties' circumstances include assets, debts and earning ability of both parties, ability to pay, duration of the marriage, and the age and health of the parties. [Citation.] . . . The family court has broad discretion in ruling on a motion for fees and costs; we will not reverse absent a showing that no judge could

12

reasonably have made the order, considering all of the evidence viewed most favorably in support of the order. [Citation.]" (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 657.)

David appears to argue the family court erred by not making all the necessary findings when it denied his request for attorney fees. When ruling on a request for attorney fees, the family court must determine: (1) whether an award of fees is appropriate; (2) whether there is a disparity between the parties' access to funds to retain counsel; and (3) whether one party has the ability to pay for both parties' legal representation. (§ 2030, subd. (a)(2); *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 168 [Fourth Dist., Div. Two].) David did not object that the family court failed to make all the necessary findings. Moreover, as long as they are supported by substantial evidence, we may affirm the family court's implied findings. (E.g., *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.)

David contends the family court erred by denying his request for attorney fees based solely on his retirement account withdrawals and purchase of an expensive vehicle. "Instead," David argues, "the trial court is required to determine how to apportion the overall cost of the litigation equitably between the parties under the relative circumstances." But the family court is only required to equalize the cost of litigation *if* it first determines there is a disparity between the parties' ability to access funds to retain counsel. (§ 2030, subd. (a)(2).) Here, the family court concluded, properly, that David had at his disposal sufficient funds to live on temporarily and to pay his attorney. Because the family court properly concluded David had access to sufficient funds to pay

13

his attorney, it was not required to equalize his and Christine's litigation costs.  In sum, the family court did not abuse its discretion by denying David's request.

## III.

## DISPOSITION

The spousal support and attorney fees orders are affirmed.  Respondent Christine M. Mitchell shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

KING

J.

MILLER

J.

14