Filed 9/4/25  Marriage of Mesa CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of CHARLES F. and KAREN MESA. | |
| CHARLES F. MESA,<br><br>Respondent,<br><br>v.<br><br>KAREN MESA,<br><br>Appellant. | F088399<br><br>(Super. Ct. No. VFL253329)<br><br>**OPINION** |

## <u>THE COURT</u>*

APPEAL from an order of the Superior Court of Tulare County.  Robin L. Wolfe, Judge.

Karen Mesa, in pro. per., for Appellant.

Charles F. Mesa, in pro. per., for Respondent.

-ooOoo-

---

\* Before Franson, Acting P. J., Snauffer, J., and Fain, J.†

† Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Charles and Karen Mesa were married in 2001, and Charles petitioned for dissolution of their marriage in 2013. Charles was ordered to pay temporary spousal support in March 2014, and in June 2015 a "status only" judgment of dissolution was entered in which jurisdiction was reserved on all other issues.

Charles petitioned the court in January 2023 to have the issue of permanent spousal support determined. He requested the court award no permanent support to Karen and also requested reimbursement for overpaid support. The temporary support order was stayed in February 2023, and the issue of permanent spousal support and Charles's reimbursement claim were heard in May 2024 over three days. After the hearing, the court ordered no permanent spousal support and ordered Karen to reimburse Charles in the amount of $7,808. The court permanently terminated its jurisdiction to award spousal support to either party.

Karen appeals from the trial court's order, raising nine issues challenging both the denial of support and Charles's entitlement to reimbursement. We affirm.

## FACTS

### I.     Background

Charles and Karen were married on April 1, 2001, and separated on January 21, 2013. Charles petitioned for dissolution of marriage on September 4, 2013.

On March 28, 2014, Charles was ordered to pay $846 a month in temporary spousal support, retroactive to February 1, 2014. The amount was calculated using the XSpouse computer software program.[1] He was also ordered to pay support arrears of $1,692. He also had to pay Karen's attorney fees in the amount of $1,000, payable at the

---

[1] XSpouse is a privately developed computer program used by family law practitioners to calculate spousal support and child support. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 378, fn. 3; *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1079.) But such computer programs cannot be used to fix permanent spousal support. (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5–6, fn. 3.)

rate of $100 per month.[2]  Thus, he immediately began paying $946 per month, with that amount being withheld from his paychecks.

A "status only" judgment of dissolution was entered June 25, 2015.  In the order, the court reserved jurisdiction over all other issues.

On January 6, 2023, Charles filed a request for order regarding spousal support. This request is not in the appellate record, so we have no way of knowing the grounds stated in the request.  What is included in the record is a declaration by Charles filed with his request, which methodically addressed the relevant Family Code section 4320 factors.[3]

In his declaration, Charles stated that Karen obtained her registered nursing license before they met.  He asserted Karen, who was 61, worked for the State of California before medically retiring, and then worked at Sierra Valley Rehab Center.  He stated he is "not aware that she has become self-supporting."  He asserted that through December 2022, he has overpaid $7,708 in temporary support.  He also claimed that the marriage was 11 years, five months and that they did not live extravagantly, rarely going out to eat and seldom vacationing out of town.  He said he was 52, of average health, in need of shoulder surgery, and was expecting to have to begin caring for his 67-year-old sister in his home.  He stated he believed Karen was living with her fiancé, her sister, and her brother-in-law—four incomes in one household.

---

[2] The court entered a "Findings and Order After Hearing" on March 28, 2014, which was not designated as part of the record.  Our knowledge of the dates and amount come from testimony.

[3] Undesignated statutory references are to the Family Code.

Section 4320 lists the facts the trial court must consider when fixing spousal support.

## II. The hearing

The hearing on Charles's request for order regarding spousal support was held on May 9, 10, and 13, 2024. Charles and Karen were the only witnesses, and Charles was represented by counsel while Karen was unrepresented. They each called the other as witnesses in their respective presentations of evidence.

### A. Charles's testimony

Charles testified they were married April 1, 2001, and separated for the final time on January 21, 2013. Their marriage produced no children, and there was no domestic violence in their relationship. They separated twice during the marriage, each time for 12 to 14 months. Both times Karen left and moved to rentals in Porterville. During those periods, the couple maintained separate bank accounts and did not pool money or pay community bills. They also were not "intimate" or "together" during those periods; they were not "seeing each other" and did not consider each other husband and wife. They did not have sex while separated.

Charles also testified that they "lived normally," not extravagantly. They did not have a lot of money and "had more credit card debt than anything." They took a yearly trip to Lake Tahoe every year for three to four days until they separated for the first time. They visited Hawaii "a couple of times," went to the Grand Canyon once, and took occasional weekend trips to the Central Coast.

Charles was currently employed full time as a correctional officer for the California Department of Corrections and Rehabilitation (CDCR). He never worked a lot of overtime. Karen used to work full time for CDCR. She was a registered nurse and then became director of nursing at two facilities in Porterville. Karen always made about $2,000 more a month gross than Charles did.

Charles testified that Karen took family leave in 2012 to care for her father in Tennessee when he got sick. When she left for Tennessee, she was working at a

4.

rehabilitation hospital.  When she returned from Tennessee, she was asked to take a demotion, but she chose to resign instead.  The couple separated shortly thereafter.

The couple sold their three-bedroom house and split the proceeds, each receiving about $35,000 from the sale.  They each kept the car they drove, and they divided the household furnishings.  They had insubstantial deposits in checking or savings accounts; Charles had "maybe a couple of hundred" dollars in cash.  They had no joint accounts when they separated.  Charles owned no stocks, Individual Retirement Accounts (IRA), or mutual funds.  They had a combined $20,000 of credit card debt, which they divided between them based on what each had accrued.

Charles, who was 53 years old at the time of the hearing, had diabetes and an autoimmune condition affecting the pancreas.  He needed shoulder surgery and was waiting until he retired in December 2024 to have the procedure.  He had remarried, had no other adults living with him besides his spouse, and had no other financial dependents.  His latest income and expense declaration, filed April 23, 2024, listed $10,401 in gross monthly income, $2,064.14 in deductions, and $10,800 in expenses.

Charles testified that, on March 28, 2014, he was ordered to pay $846 a month in spousal support, dating back to February 1, 2014.  He was thus ordered to pay $1,692 in arrears.  He was also ordered to pay $1,000 in attorney fees to Karen's attorney, payable at $100 a month.  He was thus ordered to pay a total of $946 a month, which was withheld from his paychecks.  He testified he was only supposed to pay the extra $100 for "15 or 16 months," and then the total monthly payment was to be reduced to $846.  But this never happened, and he paid $946 a month until the temporary support order was stayed upon his request in February 2023.  He testified he contacted Karen in 2016 to tell her about the overpayment, and she told him, "Well, then tough, just take me back to court then."

### B. Karen's testimony

Karen, who was 62 at the time of the hearing, admitted that she and Charles separated and claimed they separated each time for 12 months. She moved to Porterville both times, renting an apartment one time and a condominium the other, both of which she rented in her name. But she and Charles were "[n]ot at all" separated during those periods, despite living apart. They were still "together as a couple" and went on dates. Charles had a key to her rented homes. They also maintained a joint bank account during their two separations.

She became a registered nurse in 1994. She was employed full time when she met Charles, and she always earned more money than he did. She left for Tennessee in September 2012 to care for her father and stayed until after Thanksgiving. She worked full time before leaving for Tennessee. She was fired when she returned home and never worked again.

Karen never tried looking for work after returning from Tennessee. Asked if she had done anything to increase her ability to earn income, she said she would if she could. She has a "problem writing," and she was determined to be disabled by the Social Security Administration in August 2014. She testified she could reactivate her license, which would require her to complete 30 hours of continuing education units. She had experience working in nursing administration, which involved supervising and counseling other nurses.

According to her latest income and expense report, Karen's monthly income was $4,448.05, which she testified was nontaxable. She listed $230.26 in deductions and $4,278.95 in expenses.

Karen admitted that the XSpouse calculation for the temporary support award was incorrect because her monthly income at the time of $2,781 was entered into the wrong box in the computer program. That income was entered into the program as taxable when it was actually nontaxable.

6.

## C.    The trial court's order

After the hearing, the trial court issued a nine-page order methodically addressing the relevant section 4320 factors.  The court found that Karen's income was incorrectly entered into the XSpouse program for calculating temporary support, and her temporary support should have been set at $293 per month.  Thus, Charles had overpaid Karen about $71,000 in temporary support.  Also, the additional $100 per month withholding from Charles's paychecks to pay Karen's attorney fees and support arrears, which continued too long, resulted in $7,806 of overpayment.

The court found Karen had refused to obtain employment consistent with her marketable skills, as the evidence showed only limited disability.  The court found that the duties of an administrative nurse, as described during the hearing, would not include the physical duties in which she was determined disabled.  The court also noted that despite Karen complaining about her hands, she was able to "write copious notes during [the] hearing without difficulty."  The court determined Karen had voluntarily chosen to not work since returning to California from Tennessee after caring for her father.

As to the duration of the marriage, the court noted the parties' agreement that they were married in April 2001 and separated in January 2013.  The court found that while the parties disputed whether they were "intimate" during their two periods of separation, "there was no dispute" that the parties lived separately during those times and paid separate bills.  The court stated that the "length of marriage weighs heavily on granting support and there is a rebuttable presumption affecting the burden of producing evidence that a marriage of 10 years or more from the date of marriage to separation is of long duration."[4]  The court determined the marriage was a "short-term marriage" of less than 10 years.

---

[4] The court was quoting section 4336, subdivision (b):  "For the purpose of retaining jurisdiction, there is a presumption affecting the burden of producing evidence that a marriage of 10 years or more, from the date of marriage to the date of separation, is

The court found that Karen was "deemed disabled prior to August 1, 2014 and has continued to be disabled to the date of the decision by the Social Security Administrative Law Judge, John Cuskar, on or about June 27, 2016."[5]

Balancing the hardships to each party, the trial court found that, based on the parties' latest income and expense declarations, "both parties have been able to cover their current expenses notwithstanding the Court's stay of the prior spousal support order." The court also stated it "considered the goal that the supported party become self-supporting within a reasonable time. Except in marriages of long duration, a reasonable time period is generally one-half the length of marriage. The Court notes that [Charles] has been paying [Karen] spousal support for over one-half the length of marriage." The court found that Charles's nine years of payment was about as long a time as the "short term marriage."

Finally, the court stated that it considered Karen's argument that Charles's request for reimbursement of overpaid support was barred by the doctrine of laches. It rejected the argument, finding that Karen knowingly received the overpayments.

The court ordered Karen to reimburse Charles for $7,808 of overpayment and found that Karen has "no ability to pay[.]"[6] The court further ordered no spousal support

_____

a marriage of long duration. However, the court may consider periods of separation during the marriage in determining whether the marriage is in fact of long duration. Nothing in this subdivision precludes a court from determining that a marriage of less than 10 years is a marriage of long duration." Further, "[i]n short-term marriages the duration of the marriage, considered alone, will usually militate against any but short-term spousal support with a fixed termination date." (*Marriage of Preitsch & Calhoun* (1987) 190 Cal.App.3d 645, 663 (*Preitsch & Calhoun*).)

[5] No evidence about John Cuskar's decision is in the appellate record. We do not know how evidence of this decision came before the trial court.

[6] The court stated: "Petitioner is entitled to reimbursement from Respondent for overpayment in the amount of $7,808.00. The Court finds no ability to pay on behalf of Respondent."

for Karen and permanently terminated its jurisdiction to award spousal support to either party.

## DISCUSSION

We address each of Karen's nine claims, but we will begin by stating some principles of appellate procedure. We conclude that she has not demonstrated any reversible error.

## I. Principles of appellate procedure

" 'A judgment or order of the lower court is *presumed correct*[…] and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is appellant's burden to overcome the presumption of correctness and, for this purpose, must provide an adequate appellate record demonstrating the alleged error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

Appellant's burden also includes the obligation to present argument and legal authority on each point raised. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) This requires more than simply stating a bare assertion that the judgment or order is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment or order and defeat the presumption of correctness. (See *Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.) We are also entitled to disregard factual assertions in briefs without record citation, and Karen's brief contains many of them. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267.)

9.

## II. Issues

### A. Finding regarding parties' income and expenses

Karen's first claim, as we understand it, is that the trial court erroneously found based on her latest income and expense declaration that she was able to cover her expenses despite the court's stay of the temporary spousal support order. This finding was a factor in the court's determination that Karen was to be awarded no permanent support. We reject Karen's claim.

Permanent spousal support is governed by sections 4300 through 4360. Section 4330 authorizes the trial court to order one party to pay spousal support to the other in an amount and for a time period that is just and reasonable given the parties' circumstances, standard of living, and considerations required by section 4320. (*In re Marriage of Maher & Strawn* (2021) 63 Cal.App.5th 356, 363 (*Maher & Strawn*).) The statutory factors enumerated in section 4320 include the duration of the parties' marriage; the financial situations of both parties; the marketable skills the supporting party possesses or needs to acquire; the ability of the supporting party to pay spousal support; the age and health of the parties; documented history of domestic violence between the parties; the balance of hardship to the parties; the goal that the supported party shall be self-supporting within a reasonable amount of time; and any other factors the court deems just and equitable. (See § 4320.)

In crafting a spousal support order, the court is required to consider the statutory factors in section 4320. (*Maher & Strawn, supra,* 63 Cal.App.5th at p. 363.) Once it does so, it has broad discretion to issue a spousal support order that accomplishes substantial justice for the parties. (*Ibid.*) We deferentially review these orders and only find an abuse of discretion where no trial court reasonably could have made the order. (*Ibid.*) Factual findings made in support of these orders are reviewed for substantial evidence. (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 29.)

10.

Karen challenges the trial court's finding based on her latest income and expense declaration that she is able to cover her expenses. Her latest income and expense declaration lists $4,448.05 in monthly income, a combination of pension fund payments and Social Security Disability payments. Her itemized expenses total $4,278.95. In any event, she contends this expense figure does not include a monthly car payment of $389 and monthly credit card payments of $114. She asserts that these monthly payments, when added to her other monthly expenses, cause her expenses to exceed her income. However, the car payment and credit card payments were itemized in her declaration and included in her total expense figure. So it is questionable how she asserts in her appellate briefing that they were not included. She has not shown how the trial court erred by determining that she is able to cover her expenses without support.

### B. Short-term marriage finding

Karen next contends the trial court erred in finding that her and Charles's marriage was short-term. The dates of marriage and separation are questions of fact that are reviewed for substantial evidence, and the court may consider periods of separation during marriage in determining the duration of the marriage. (*In re Marriage of Lee & Lin* (2019) 41 Cal.App.5th 698, 702 (*Lee & Lin*); § 4336, subd. (b).)

We first explain the significance of the short-term duration finding. As mentioned, one of the section 4320 considerations is "[t]he goal that the supported party shall be self-supporting within a reasonable period of time." (§ 4320, subd. (*l*).) And "[e]xcept in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purpose of this section generally shall be one-half the length of the marriage." (*Ibid.*) Indeed, "[i]n short-term marriages the duration of the marriage, considered alone, will usually militate against any but short-term spousal support with a fixed termination date." (*Preitsch & Calhoun, supra,* 190 Cal.App.3d at p. 663.)

11.

Section 4336 provides that a marriage is of "long duration" when it lasts 10 years or more "from the date of marriage to the date of separation." (§ 4336, subd. (b).) It also provides that "the court may consider periods of separation during the marriage in determining whether the marriage is in fact of long duration." (*Ibid.*) When a marriage is of long duration, "the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage." (*Id.*, subd. (a).) Otherwise, "[a]n order for spousal support terminates at the end of the period provided in the order and shall not be extended unless the court retains jurisdiction in the order or under Section 4336." (§ 4335.) The dates of marriage and separation are questions of fact that are reviewed for substantial evidence. (*Lee & Lin, supra,* 41 Cal.App.5th at p. 702.)

The substantial evidence standard is highly deferential. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581 (*Schmidt*).) "It has three pillars. First, we accept all evidence supporting the trial court's [finding]. Second, we completely disregard contrary evidence. Third, we draw all reasonable inferences to affirm the trial court. These three pillars support the lintel: we do not reweigh the evidence. [Citation.] Under this standard of review, parties challenging a trial court's factfinding bear an 'enormous burden[.]' " (*Id.* at pp. 581–582.)

Our job under this standard "is only to see if substantial evidence exists to support the" lower court's finding, not to determine whether substantial evidence might support the losing party's version of events. (*Schmidt, supra,* 44 Cal.App.5th at p. 582.) Indeed, we must resolve conflicts in the evidence in favor of the trial court's finding. (*Ibid.*) We also do not " 'evaluate the credibility of witnesses' "—that is the trial court's function. (*In re Marriage of Nakamoto v. Hsu* (2022) 79 Cal.App.5th 457, 470.)

Karen states the substantial evidence standard at the beginning of the Argument section of her opening brief, before her discussion of the issues, but does not state to which issues the standard applies. In her discussion of this issue as to the marriage's duration, she proceeds as if the standard of review were de novo. She argues that the trial

court should have adopted her version of events, which is that the couple's two periods of separation should not have been subtracted from the total length of the marriage. She asserts the evidence she presented at trial that they remained together during the periods of separation. Her argument is not tailored to the applicable standard of review, which dooms her claim. (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 597 [appellant's argument "lacks legal force" if it does not apply the appropriate standard of review].)

Moreover, Charles's testimony provided substantial evidence that the couple was truly separated during the two periods of separation. He testified that, during the two separations, they were not intimate, did not date, and did not consider each other husband and wife. The trial court found this testimony credible, and we have no basis to second guess the trial court's factfinding here. The trial court's determination that the marriage was short-term was supported by substantial evidence.

### C.     Collateral attack

Karen contends that since there was insufficient evidence of a "change of circumstances," Charles's "motion for modification" of spousal support was an "impermissible collateral attack on a prior final order." But the record contains nothing about Charles ever bringing a motion to modify any order, including the temporary spousal support order. Rather, the record shows Charles filed a request for an order on the issue of permanent spousal support—an issue that had never been decided.

Karen fails to acknowledge that temporary support and permanent support are different. Temporary and permanent spousal support orders serve separate purposes and are governed by different procedures. (*In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 166.) The former are designed to maintain the status quo until the issue is tried or settled, while the latter are designed to provide financial assistance in light of the section 4320 factors and involve the court's exercise of discretion in the weighing process. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525; *In re Marriage of*

13.

*Burlini* (1983) 143 Cal.App.3d 65, 68.) A temporary support order automatically terminates when the issue of permanent support is decided. (*In re Marriage of Hamer* (2000) 81 Cal.App.4th 712, 717, superseded by statute on other grounds as stated in *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 185–186 [permanent support order supersedes temporary order].)

Charles never moved to modify any order. The temporary support order was terminated upon entry of the order on permanent support; it was not modified before then. Thus, Karen's claim is based on a misunderstanding of the nature of the orders issued in this case. No order was attacked. She has failed to show error.

### D.    No *Gavron* warning

Karen next complains that in "[t]he previous support order entered on 6/25/2015, did not include a Gavron Warning notifying Appellant that she would be required to become self-supporting by a certain time." Her opening brief cites the status-only judgment of dissolution entered June 25, 2015, which said nothing about spousal support. She contends that since the "original support order" did not direct her toward becoming self-supporting, she "should not be penalized years later for a failure to become employed."

*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 held that, without a "reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences," failure of the supported spouse to become self-supporting cannot be a "changed circumstance" sufficient to consider a modification of support. (*Id.* at p. 712.) "Thus, what has become known as a '*Gavron* warning' is a fair warning to the supported spouse he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55.)

The only previous support order was the temporary one entered March 28, 2014. This temporary support order was never modified before permanent support was decided;

14.

it was only *stayed* in 2023.  The temporary support order terminated automatically when the order on permanent support was issued.  Karen appears to argue that a *Gavron* warning must issue in a temporary support order, otherwise the amount of permanent support ordered cannot be less than the temporary support amount.  She cites no authority for this claim and thus has failed to carry her burden of showing error.  (See also *Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 [appellate court may deem argument waived or abandoned if not supported by legal argument with citation to authority].)

### E.    Disability finding

The next heading in Karen's opening brief reads, "Appellant has been deemed disabled by the Social Security Administration."  She appears to be challenging the trial court's finding that Karen "has refused to seek employment consistent with [her] marketable skills."  To that point, the court found that Karen's disability was limited and that she could perform administrative nursing tasks.  Karen claims that Exhibit F, which was admitted into evidence, shows she was found to be completely disabled.  Exhibit F is not part of the appellate record, but Karen claims it was a Notice of Decision from a Social Security Administration administrative law judge stating that she is "unable to do any kind of work."  But since we do not have Exhibit F in our record, we cannot determine for ourselves what that document says.  This is fatal to Karen's claim because "[f]actual matters that are not part of the appellate record will not be considered on appeal" and should not even be referred to in the briefs.  (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102.)

### F.    Material change in circumstances

Karen next claims that the order appealed from must be reversed because "[m]odification of a spousal support award requires a change of circumstances since the last order," and the trial court made no such finding.  We reject the claim.  First, the order appealed from did not modify an award.  Second, Karen cites no authority holding that a

15.

change of circumstances is required to set permanent support in the first instance at an amount lower than that of the temporary support order.

### G. Jurisdictional challenge

Karen contends the trial court acted in excess of jurisdiction in determining that Charles overpaid Karen $71,000 of spousal support. She cites section 3692 as authority for this proposition. That statute sets the limits on setting aside a support order. It provides: "Notwithstanding any other provision of this article,[7] or any other law, a support order may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate."

Karen fails to explain how section 3692 is relevant here. Indeed, this statute has nothing to do with this case because no support order was ever set aside in this case. There is no way this statute could apply here to deny the court jurisdiction. We reject the claim.

### H. Laches

Karen argues that Charles's claim for reimbursement is barred by laches. The elements of the defense of laches are: (1) failure to assert a right or claim, (2) the delay was not reasonable or excusable, and (3) prejudice to the adverse party. (*In re Marriage of Goldman* (2025) 107 Cal.App.5th 1258, 1262.) As to this last element, Karen asserts only that she "has been financially prejudiced by [Charles's] stale attempt to recover over nine years' worth of spousal support overpayments." Since she presents no reasoned argument on the prejudice element, her appellate claim regarding laches fails. (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 383.) "We are not bound to develop [Karen's] argument for [her]." (*Ibid.*)

---

[7] The article under which section 3692 resides is titled "Relief from Orders."

### I.    Judicial bias

The final heading in the Argument section of Karen's brief reads, "Appellant prejudiced by Judge Wolf's biased rulings." What follows is a disjointed set of grievances, none of which are tied to alleged judicial bias. She complains about having been sanctioned for missing a court date and about the court not admitting one of her exhibits into evidence. But she does not explain how these judicial actions were motivated by judicial bias. Her claim thus fails. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 [appellate court not required to examine undeveloped claims].)

### DISPOSITION

The order is affirmed. Costs on appeal are awarded to Charles.